UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Anthony S. Davis, | Case No. 3:23 CV 366 |
| Petitioner, | JUDGE JAMES G. CARR |
| v. | |
| Warden Corey Foster, | OPINION AND ORDER |
| Respondent. | |

*Pro se* Petitioner Anthony S. Davis filed the above-captioned Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the State of Ohio's determination of the manner in which his multiple sentences are served, and his projected release date. He claims that he is being denied substantive due process and being subjected to double jeopardy because the Ohio Bureau of Sentence Computation calculated some of his sentences to run consecutively, not concurrently. He further asserts that the Ohio Third District Court of Appeals erred in dismissing his state habeas petition for not attaching his parole revocation papers. For the reasons stated below, the Petition is denied, and this action is dismissed.

**I. Background**

Davis does not attack one particular conviction but instead challenges the way in which the Ohio Department of Rehabilitation and Corrections (ODRC) is calculating how his sentences are to be served—specifically, whether they should be served consecutively or concurrently to each other. Since 1977, Davis has spent more time inside Ohio's prison system than out. He was first incarcerated on May 20, 1977, after the Franklin County Court of Common Pleas sentenced him to 4 to 25 years imprisonment for aggravated burglary. On November 12, 1982, after serving over

5 years, Davis was paroled. He reoffended in 1985 and was convicted in Franklin County of two counts of theft and forgery. On September 18, 1985, he received two 18-month sentences that were ordered to be served concurrent with each other. He claims he was awarded 166 days of jail time credit toward his 18-month sentences.

Davis returned to prison on October 18, 1985, and he stayed there until he was paroled on August 15, 1986. In January 1987, Davis pled guilty in the Guernsey County Court of Common Pleas to breaking and entering and was sentenced to one year imprisonment with 25 days of jail time credit. He was incarcerated from January 20, 1987 until April 3, 1989, when he was again paroled.

Just six months after receiving parole, Davis landed back in prison on October 19, 1989 with a new sentence of 5 to 25 years for aggravated burglary from Morrow County. Davis indicates he also had a 3.5-year and a 10-month sentence that were added to the indefinite sentence imposed. He states he was awarded 141 days of jail time credit off of this sentence. Davis then served over six years before being paroled on December 22, 1995.

Davis soon acquired two new convictions. A criminal complaint was filed against him in the Ashland County Court of Common Pleas on February 13, 1996 on charges of breaking and entering and attempted breaking and entering. That case was merged with another criminal case that Ashland County brought against Davis in April 1996 for breaking and entering, grand theft, attempted breaking and entering, and possession of criminal tools. The Ashland County Court of Common Pleas sentenced Davis on October 1, 1996 to a total of five years on convictions of breaking and entering, theft, and possession of criminal tools. Davis also was charged in the Pickaway County Court of Common Pleas on April 12, 1996 on charges of breaking and entering.

He was convicted on November 26, 1996 and sentenced to one year, but the court allowed Davis to serve that sentence concurrently with the sentence imposed by the Ashland County Court. He was readmitted to prison on October 1, 1996 and served a little over three years, before being paroled on February 18, 2000.

Ten months later, Davis was arrested on a warrant from Richland County on December 8, 2000, on three counts of forgery and one count of drug abuse. On January 5, 2001, Davis was back in prison as a parole violator. He was convicted on September 28, 2001 on charges of failure to appear and forgery, for which the court sentenced him to ten months on each count to be served concurrently to each other but consecutive to his other cases.

Davis remained in prison until he was again paroled on January 2, 2003. He returned to prison on February 11, 2005, with a new nine-year total sentence from Franklin County for breaking and entering, possession of criminal tools, and burglary. He was granted 512 days of jail time credit. Additionally, he was convicted of: (1) four counts of breaking and entering in Champaign County, for which he received a one-year sentence; (2) one count of breaking and entering in Richland County, for which he received a six-month sentence; (3) one count of possession of drugs, one count of receiving stolen property, one count of breaking and entering, and four counts of theft in Franklin County for which he received concurrent one-year sentences; and (4) one count of engaging in corrupt activities in Franklin County, for which he received a one-year sentence to be served concurrent to the sentences in Champaign County, Richland County, and Franklin County, but consecutive to the nine-year sentence imposed in Franklin County in 2005.

In addition, Plaintiff was assessed 71 days of "lost time" in 2000, and 44 days of "lost time" in 2002. "Lost time" is defined by Ohio Administrative Code § 5210.1-1-31 as "the specific period of time during which an offender's period of supervision or prison term is tolled or not credited. Tolling means to stop counting toward the offender's sentence. Lost time can result from being declared a violator-at-large, violator in custody out-of-state, being unavailable for supervision, or other reasons. Lost time is time that does not come off the offender's sentence and can modify an offender's end of stated term, maximum expiration of sentence, expiration of definite sentence, or close of supervision date.

Ohio Revised Code § 2929.41 governs how multiple sentences imposed by different courts are treated. For sentences resulting from criminal activity that occurred between January 1, 1974 and July 1, 1996 (the effective date of a subsequent amendment), any sentence of imprisonment is served consecutively to any other sentence of imprisonment when it is imposed for a new felony committed by a probationer, parolee, or escapee. Former Ohio Rev. Code § 2929.41(B) (1974). If multiple consecutive, indefinite sentences are imposed, the minimum term is the aggregate of the consecutive minimum terms, and the maximum term is the aggregate of the consecutive maximum terms. Former Ohio Revised Code § 2929.41(C)(2) (1974); Ohio Adm. Code 5120-2-03(E)(1). For consecutive definite sentences, the term served is the aggregate of the definite sentences. Ohio Adm. Code 5120-2-03(E)(2). If a prisoner must serve consecutive indefinite and consecutive definite sentences, then the prisoner must serve the definite sentences first, followed by the indefinite sentences. Former Ohio Revised Code § 2929.41(C)(4) Ohio Adm. Code 5120-2-03(E)(5). While the prisoner is serving the definite terms, the indefinite terms are tolled. *Ohio ex rel. Foster v. Ohio State Adult Parole Auth.*, 65 Ohio St. 3d 456 (1992).

Case: 3:23-cv-00366-JGC Doc #: 4 Filed: 05/12/23 5 of 14. PageID #: 24

Sentences imposed after July 1, 1996 are to be served concurrently unless otherwise specified by the sentencing court. Ohio Revised Code § 2929.41(C)(2) (1995).

Applying the former Ohio Revised Code § 2929.41 to the sentences Davis received from 1977 to 1996, the ODRC aggregated his indefinite sentence in 1977 (4 to 25 years) with his 1989 sentence (5 to 25 years) for a total indefinite sentence of 9 to 50 years. Davis's definite sentences in 1985 (18 months), 1987 (1 year), and 1996 (5 years) were also aggregated to a definite term of 7 years and 6 months. Although Davis served 5 years and 5 months on his 1977 conviction before he was paroled, consecutive definite sentences are served prior to consecutive indefinite sentences. Thus, when he returned to prison, he began serving his newly imposed definite sentence, and his 1997 indefinite sentence was tolled. Each time he returned to prison, he began to serve the remainder of his aggregated definite sentences before beginning to serve his aggregated indefinite sentence of 9 to 50 years.

Davis's sentences in 2001 and 2005 were calculated under the amended version of Ohio Revised Code § 2929.41. His 10-month sentences imposed in 2001 were served concurrent to each other but the court's judgment made them consecutive to his other sentences. His sentences in 2005 were also concurrent to each other with the exception of his 1-year sentence in Franklin County which was ordered by the court to be served consecutively.

With these parameters, the ODRC Bureau of Sentence Computation calculated his maximum sentence date of November 26, 2032. In arriving at this date, they subtracted from his sentences the appropriate jail time credits and added back the lost time he received.

Davis disputes this calculation. He does not calculate the sentences received from 1977 to 1996 as consecutive sentences but rather as concurrent sentences. He claims the ODRC did

5

not properly apply Ohio law when they determined that some of his sentences were to be served consecutively. Moreover, he does not subtract the time he was released on parole from his sentences. Instead, he begins with the date the sentence was imposed (or in some cases, prior to the date it was imposed). He subtracts the jail time credit and then counts out the number of years and months that were imposed. He then determines that this was the expiration date of his sentence. He further alleges that the Ohio Adult Parole Authority granted him a final release from parole for his 1977 conviction in November 1995. The ODRC does not agree that a final release was granted for that conviction. He also appears to argue he should be credited for his lost days rather than having them added back onto his sentence. He claims that by his calculations, he has been held beyond the expiration of his sentences since 2018.

Davis raised these objections to the Ohio courts in multiple ways. In 2014, Davis filed a declaratory judgment action in the Franklin County Court of Common Pleas, asserting that his 1977 conviction had expired and asking that it be removed from his active sentences. Both Davis and the ODRC filed motions for summary judgment. The ODRC argued that under the controlling version of Ohio Revised Code § 2929.41, in effect from 1977 to 1996, his sentences were aggregated and served consecutively. Davis argued that they were served concurrently and that his sentence expired. The Common Pleas Court granted the ODRC's motion and denied Davis's motion, finding the sentences were properly aggregated as consecutive sentences. He appealed that decision, and the Ohio Tenth District Court of Appeals affirmed the lower court decision, adding that his sentence was properly calculated. *See Davis v. Dept. of Rehab. & Corr.*, 2014-Ohio-4589, ¶ 22 (10th Dist. Ct. App., Oct. 16, 2014).

In February 2015, Davis filed a petition for a writ of habeas corpus under Ohio law, claiming that he fully served his 1977 conviction, that he had been granted a final release from parole for that conviction, and that it should not be aggregated with any other sentence. *See Ohio ex rel. Davis v. Sheldon*, No. 2015-0193 (Ohio Sup. Ct., May 20, 2015). The Supreme Court of Ohio denied the petition, stating Davis did not provide the documentation to demonstrate that he was granted a final release from parole for that sentence as opposed to numerous other sentences for which he was released and returned as a parole violator. He therefore did not prove he was entitled to habeas relief. *Id.*

Davis filed a petition for a writ of mandamus in the Ohio Tenth District Court of Appeals in 2019, once again arguing that his sentences should not be aggregated and that he should be released. *See Ohio ex rel. Davis v. Bureau of Sentence Computation & Recs. Mgmt.*, 2019-Ohio-4571, ¶ 1 (10th Dist. Ct. App., Nov. 5, 2019). He filed a motion for summary judgment in February 2019. The appellate court, citing its decision in *Davis v. Dept. of Rehab. & Corr.*, 14-Ohio-4589 (10th Dist. Ct. App., Oct. 16, 2014) and the Supreme Court of Ohio's decision on his habeas petition, declared the issue barred by *res judicata*.

Undeterred, Davis filed a second petition for a writ of habeas corpus under Ohio law in the Ohio Third District Court of Appeals in 2021. Once again, he asserted that his sentences were erroneously aggregated, that he was granted a final release from parole for his 1977 conviction, and that the Bureau of Sentence Calculation improperly calculated his first five sentences as consecutive rather than concurrent. The court of appeals dismissed the petition on July 13, 2021, stating Davis once again did not attach documentation of commitment, parole revocations, or his release from parole. *See Ohio ex rel. Davis v. Sheldon*, No. 1-21-07 (Ohio 3d Dist. Ct. App., July

13, 2021). Davis appealed this decision, and The Supreme Court of Ohio affirmed on August 11, 2021. *See Ohio ex rel. Davis v. Sheldon*, No. 2021-0995 (Ohio Sup. Ct., August 11, 2021).

In addition, Davis filed three petitions for writs of habeas corpus in federal court under 28 U.S.C. § 2254. *Davis v. Warden, Allen Oakwood Corr. Inst.*, No. 2:15-CV-2931 (S.D. Ohio, Dec. 31, 2015) (challenging his 1987 Guernsey County conviction and sentence computation); *Davis v. Warden, Allen Oakwood Corr. Inst.*, No. 2:15-CV-2935 (S.D. Ohio, Jan. 13, 2016) (challenging his 1985 Franklin County conviction and sentence computation); *Davis v. Sheldon*, No. 2:15-CV-2971 (S.D. Ohio, June 27, 2016) (challenging his 1977 Franklin County conviction and sentence computation). All three cases were filed originally in the Northern District of Ohio and transferred to the Southern District. All three cases were dismissed as beyond the one-year statute of limitations.

Davis has now filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. He claims he is not challenging any one sentence but rather the manner in which the Bureau of Sentence Computation determine how all of his sentences will be served. He claims they misapplied Ohio law in a manner that "shocks the conscience," denying him substantive due process. He also claims the Ohio Third District Court of Appeals erred in dismissing his Ohio habeas petition for not attaching his parole revocation papers.

## II. Standard of Review

Although Davis filed this Petition under 28 U.S.C. § 2241, he must comply with all the requirements of 28 U.S.C. § 2254. It is a well-established rule of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the more general one. *See Edmond v. United States*, 520 U.S. 651, 657 (1997). The Sixth Circuit has

instructed that all petitions filed on behalf of persons in custody pursuant to state court judgments are construed as being filed under § 2254 and are subject to the various restrictions imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA) for obtaining habeas relief from a state conviction. *See Rittenberry v. Morgan*, 468 F.3d 331, 337 (6th Cir. 2006). Therefore, regardless of the statutory label a petitioner places on his habeas petition, habeas petitions of state prisoners are governed by 28 U.S.C. § 2254. *See Byrd v. Bagley*, 37 Fed. App'x 94, 95 (6th Cir. 2002).

When reviewing an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774–76 (6th Cir. 2008). The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court may not grant habeas relief on any claim that was adjudicated on the merits in any state court unless the adjudication of the claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Wilkins*, 512 F.3d 768, 774–76 (6th Cir. 2008).

### III. Procedural Barriers to Habeas Review

Before a federal court will review the merits of a Petition for a writ of habeas corpus, the Petitioner must overcome several procedural hurdles. Specifically, the Petitioner must surmount the barriers of exhaustion, procedural default, and time limitation.

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27 (2004). Exhaustion is fulfilled once a state supreme court provides a convicted defendant a full and fair opportunity to review his or her claims on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). To be properly exhausted, each claim must have been "fairly presented" to the state courts, both in terms of the legal claims presented and the factual basis for each claim. *See, e.g.*, *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003).

The doctrine of procedural default also limits access to federal court review of the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal Petition." *Id*. at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982)). In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806. Procedural default may occur in two ways: (1) a Petitioner fails "to comply with state procedural rules in presenting his claim to the appropriate state court and the state court dismisses

10

the claim on that ground; or (2) a Petitioner fails to raise the claim through all levels of appeal and no longer has a remedy available to exhaust the claim. If, at the time of the federal habeas Petition, state law no longer allows the Petitioner to raise the claim, the claim is procedurally defaulted." *Williams,* 460 F.3d at 806.

Finally, a one-year statute of limitation applies to § 2254 habeas corpus petitions. The limitation period runs from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; or the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.

Simply stated, a federal court may review only federal claims that were evaluated on the merits by a state court and were then timely presented to the federal court. Claims that were not so evaluated in state court, either because they were never presented to the state courts (*i.e.*, exhausted) or because they were not properly presented to the state courts (*i.e.*, were procedurally defaulted), generally are not cognizable on federal habeas review. Claims not timely presented to the federal court are also barred.

In addition to these limitations, a petitioner may not file a second or successive petition if his first petition was decided on the merits. Before a second or successive petition for a writ of habeas corpus can be filed in the district court, a petitioner must move in the appropriate Circuit Court of Appeals for an order authorizing the district court to consider the application. 28 U.S.C. § 2244(b)(3)(A). The district court does not have jurisdiction to entertain a successive petition for a writ of habeas corpus in the absence of an order from the court of appeals authorizing the filing. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997). When a second or successive petition is filed

in this Court without § 2244(b)(3) authorization, this Court must transfer the petition to the Sixth Circuit Court of Appeals. *Id.*

### III. Analysis

Davis filed three previous petitions in this Court which were subsequently transferred to the Southern District of Ohio, where they were dismissed as barred by the one-year statute of limitations. The first question this Court must address is whether this Petition is successive. If it is, this Court lacks jurisdiction to entertain this Petition and it must transfer it to the Sixth Circuit.

To be "successive" within the meaning of the statute, the subsequent petition must relate to the same conviction or sentence under attack in the prior petition. *See In re Page*, 179 F.3d 1024, 1025 (7th Cir. 1999) (citing cases). Moreover, the prior petition must have been dismissed on the merits. A dismissal on the grounds of procedural default or statute of limitations is deemed to be dismissal on the merits. *See id.*; *Staffney v. Booker*, 2009 WL 4506425, at *1 (E.D. Mich. Nov. 25, 2009).

Davis's prior federal habeas corpus petitions were all dismissed on the merits. The only question is whether this Petition is attacking the same conviction that he attacked in his prior petitions. His prior petitions attacked specific convictions in Guernsey County and Franklin County. In this Petition, he is challenging the way in which all of his sentences were calculated to be served by the Ohio Bureau of Sentence calculation. While his arguments in this Petition definitely overlap with the arguments he asserted in his prior petitions, it also includes other convictions and sentences not previously at issue. For that reason, the Court finds that this Petition is not successive.

Nevertheless, this Petition does not make it beyond the procedural barriers to habeas review. As an initial matter, the Petition is time-barred. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one–year limitations period to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). This period starts to run from the latest of "the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period can be tolled during the pendency of a "properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2); however, if the statute of limitations period already expired when the post-conviction or collateral review petition was filed, there is no statute of limitations left to toll. The filing of the motion does not reset the clock.

Although Davis challenges the manner in which all of his sentences were calculated, he received his last sentences in 2005. By that time, he knew or should have known how his sentences prior to 1996 were being calculated. He would have had one year from that date to bring his habeas Petition challenging the calculation. Instead, he waited eighteen years to bring this federal habeas Petition. Furthermore, even if his 2014 filing of his declaratory judgment action restarted the clock, the Ohio courts rendered a final decision in the case in 2015. This Petition was filed eight years after that decision. His claims are time-barred.

Finally, even if he could get beyond the barriers to habeas relief, the claims are not cognizable in a federal habeas corpus petition. A federal court may grant habeas relief only on the ground that the Petitioner is in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C.A. § 2254; *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). It is "not the province of a federal habeas court to reexamine state-court determinations

13

on state-law questions." *Estelle*, 502 U.S. at 68. Therefore, claims involving a state's interpretation of its own law or procedure are not cognizable on federal habeas corpus review. *Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000); *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988). The question of whether sentences should run concurrently or consecutively is a matter of substantive state law and not cognizable in a federal habeas corpus proceeding. *Harrison v. Parke*, 917 F.2d 1304, 1990 WL 170428, *2 (6th Cir. 1990) (citing *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977)). Indeed, that issue is governed by Ohio statute. Because Davis's claim, when pared down to its core, rests solely upon Ohio's interpretation of its statutes dictating how multiple sentences are to be served, Davis's claim is solely a matter of state law and not cognizable on federal habeas review.

## IV. Conclusion

Accordingly, the Petition for a Writ of Habeas Corpus (Doc. 1) is denied, and this action is dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

SO ORDERED.

*/s/ James G. Carr*
JAMES G. CARR
UNITED STATES DISTRICT JUDGE

14